SHAWN A. LUIZ (6855)
841 Bishop Street, Suite 200
Honolulu, Hawaii 96813
Telephone: (808) 538 - 0500
Facsimile:(808) 564 - 0010
E - mail: attorneyluiz@gmail.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| DEBRA ARELLANO; MICHAEL JOSEPH WARNOCK, SR.; MICHAEL JOSEPH WARNOCK, III; ROE ESTATE; JOHN AND JANE ROES 1-10; and OTHER ROE ENTITIES 1-10,<br><br>　　　　　　　　Plaintiffs,<br><br>　vs.<br><br>MISTY ANN ADAMS-WARNOCK; WAYNE H. ADAMS; JOHN AND JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and OTHER DOE ENTITIES 1-10,<br><br>　　　　　　　　Defendants.<br>_____ | CIVIL NO. _____<br><br><br><br><br><br><br><br><br>**COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS** |

## **COMPLAINT**

COME NOW the above-named Plaintiffs, by and through their attorney,

Shawn A. Luiz, and for their Complaint against the above-named Defendants,

allege and aver as follows:

1

## INTRODUCTION

1. This action arises under federal diversity jurisdiction because of the parties' multiple States of residency and the amount in controversy.

## JURISDICTION

2. As set forth more fully below, the amount in controversy herein exceeds $75,000, exclusive of interests and costs. This Court has subject matter jurisdiction based on the amount in controversy and diversity of the parties, pursuant to 28 U.S.C. § 1332.

## VENUE

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

4. Plaintiff DEBRA ARELLANO (Debra) is a resident of the City and County of Honolulu and is a surviving sister of Michael Joseph Warnock, Jr., deceased.

5. MICHAEL JOSEPH WARNOCK, SR. (Michael, Sr.), is a resident of Citrus County, Florida and is the surviving father of Michael Joseph Warnock, Jr., deceased.

6. MICHAEL JOSEPH WARNOCK, III (Michael, III), is a citizen of Las Vegas, Nevada and is a surviving son of Michael Joseph Warnock, Jr., deceased.

7. Defendant MISTY ANN ADAMS-WARNOCK (Misty) is a resident of Citrus County, Florida.

8. Defendant WAYNE H. ADAMS (Adams) is a resident of Citrus County, Florida and the father of Misty.

9. Plaintiffs are informed and believe that Plaintiff ROE ESTATE, JOHN AND JANE ROE PLAINTIFFS 1-10, and OTHER ROE ENTITIES 1-10, are necessary and indispensable parties who will be later identified and the complaint be amended within a reasonable time after Plaintiffs identify such Plaintiffs and/or their responsibilities to afford Plaintiffs and Roe Plaintiffs full relief in this matter and prevent unjust enrichment of the Defendants and/or create a constructive trust for the benefit of those additional Plaintiffs wronged by Defendants' wrongful actions plead herein.

10. Defendants JOHN AND JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and OTHER DOE ENTITIES 1-10, are individuals, partnerships, corporations and entities who are sued herein under fictitious names for the reason that their true names and/or responsibilities are presently unknown to Plaintiffs except that Plaintiffs are informed and believe that they are connected in some manner with known Defendants and/or are responsible for all or a portion of the conduct and damages alleged herein which occurred on or about the dates and times more particularly described in this Complaint, and who

are or may be necessary parties in order for the Court to grant the appropriate relief in this matter. Plaintiffs have initiated a review of the respective responsibilities relating to its Complaint, as described herein, as a diligent and good faith effort to ascertain the identity, actions and liability of said unidentified Defendants. Plaintiffs will make the name or identity of the Defendants known within a reasonable time after Plaintiffs identify such Defendants and/or their responsibilities.

## DEFENDANTS' WRONGFUL ACTIONS

11.     On or about August 11, 2022, Misty knowingly purchased Heroine/Fentanyl from her drug dealer connection, "Mick" at the Dollar General in Inverness, Florida.

12.     Mick warned Misty of the potency of the Heroine/Fentanyl as "Mick" told Misty words to the effect "This one has more Fentanyl than normal so be careful when taking it".

13.     Misty transported the Heroine/Fentanyl she purchased from "Mick" to 8485 E HAMPTON POINT ROAD, INVERNESS, FLORIDA, 34450; Parcel Identification Number: 2342269 (Michael Joseph Warnock, Jr., deceased, and Misty were joint owners on the warranty deed discussed *supra*).

14.     On or about August 11, 2022, at approximately 11:00 p.m. East Coast Standard time, Misty gave her husband, Michael Joseph Warnock, Jr., deceased

(Michael, Jr., deceased), who she was a care giver for, a lethal dose of Heroine/Fentanyl she purchased from "Mick".

15. Michael, Jr., deceased, had previously suffered a traumatic brain injury on or about May 13, 2015, arising from a motor vehicle accident. As a result of the motor vehicle accident, Michael Jr., deceased, had short- and long-term memory loss, had difficulty making his own decisions, was unsteady on his feet, unable to cook for himself as documented on form SA-3373-BK of the Social Security Disability Function Reports as completed by Misty and Misty was his wife, guardian, and caregiver.

16. Misty failed to warn Michael, Jr., deceased, that she had brought into the home a lethal drug, Heroine/Fentanyl.

17. In the alternative, even had Misty warned Michael, Jr., deceased, of the Heroine/Fentanyl, Michael, Jr., deceased, lacked the requisite mental capacity to understand the danger associated with Heroine/Fentanyl.

18. After creating an inherently dangerous environment and activity for Michael, Jr., deceased, Misty fatally injured him through a drug overdose of Heroine/Fentanyl, which she knowingly purchased.

19. Misty knew or should have known the dose she gave Michael Jr., deceased, could likely be fatal based on her many years of experience with

prescription and/or illicit drugs, and additionally, as she worked in medical offices in the past.

20. After Misty gave Michael, Jr., deceased, the Heroine/Fentanyl that she purchased, Michael Jr., deceased, suffered an adverse reaction, fell to the floor, and lay on the floor of the subject house covered in vomit while on his back. Michael Jr., deceased, most likely aspirated and/or had stopped breathing and/or had his heart stopped by the subject drugs that Misty gave Michael, Jr. deceased. Misty failed to render aid or call 911 and instead called her father, Adams, who agreed to meet her at the subject house while Michael Jr., deceased, laid unconscious or deceased on the floor.

21. Adams left his house and traveled approximately 30-minutes to meet Misty at the subject house while Michael, Jr., deceased, lay on the floor unconscious or deceased.

22. Before emergency services or the police were called, Misty and Adams conspired together and in agreement flushed the remaining Heroine/Fentanyl she knowingly purchased down a toilet in the subject house to dispose of the fruits of her criminality.

23. Adams then took the foil wrapper of the Heroine/Fentanyl that was located in Misty's dresser drawer and in order to provide "cover" for Misty and mislead the police and obstruct justice, he relocated the Heroine/Fentanyl foil

wrapper to Michael Jr.'s, deceased's, dresser drawer to make it appear that the Heroine/Fentanyl belonged to Michael rather than Misty.

24. Misty lied to the police who arrived on scene and mislead the police in their investigation and told the police an elaborate hoax/story to "cover her tracks": Misty told the police that Michael, Jr., deceased, and her planned to watch a movie together; that Michael, Jr., deceased, went to Circle K to get soda before the movie; that while Michael, Jr., deceased, was at the Circle K, Misty fell asleep watching a movie on her phone; there was a sound in the movie that woke her up; when she woke up she saw Michael, Jr., deceased's, feet lying on the bathroom floor; Misty went to Michael, Jr., deceased and started CPR[1] and called 911. Misty told the police she then called her father Adams[2]. Misty told the police that Adams called Michael Jr., deceased's father, Michael Sr. at 1:40 a.m. to tell Michael Sr. that his son passed away from a drug overdose.

25. According to Misty's timeline, Michael, Jr., deceased, died on August 12, 2022, at approximately 1:00 a.m. when Michael, Jr., deceased, had died

---

[1] This is highly implausible as when Michael Sr. arrived at the subject house, Michael Jr. was covered and lying-in a substantial amount of vomit and Misty had no vomit anywhere on her face or clothes. Moreover, Misty was perspiring profusely and Misty's clothing she wore was soaking wet as if she had taken a shower with her clothes on which is consistent with the ingestion of illicit drugs.
[2] Adams lives approximately 30-minutes away which makes it highly improbable that he would have been at the house when paramedics and police arrived if Misty had called 911 and then him.

on August 11, 2022, at approximately 11 p.m. and laid there for approximately two hours without aid from Misty while she fabricated an elaborate scheme and conspired with Adams to "cover her tracks" and mislead the police.

26. When Michael, III confronted Misty about his father's death, Misty admitted to Michael, III that she gave Michael Jr., the decedent, the lethal drugs causing his death, Adams and her flushed the drugs down the toilet before the police came, moved the foil wrapper from Misty's dresser drawer to Michael's dresser drawer before the police came, and stated that Michael died at 11 p.m. on August 11, 2022 which is not consistent with what she told the police.

27. Debra telephoned Michael, Jr., deceased, on or about July 31, 2022, to wish him a happy birthday. Michael, Jr., deceased, told Debra at that time that Misty was not working, he could not pay the mortgage and bills as Misty was using his Social Security Disability Check of approximately $1300.00 per month to purchase drugs and that he was extremely distressed and did not know what to do. Debra invited Michael, Jr., deceased, to come stay with her in Hawaii as Michael had been there many times for extended periods of time from 1992 until Michael Jr. met Misty. Debra told Michael, Jr., deceased, she would make travel arrangements and purchase a plane ticket for Michael, Jr., deceased, to come stay with her and her family in Hawaii to get away from Misty, clear his mind and

determine a solution to the dangerous, unhealthy, and financially detrimental predicament he found himself in through no fault of his own.

28. The subject house in Citrus County where these events took place is a Certain land situate in Citrus County, Florida, to-wit: Commence at the quarter section corner on the East boundary of Section 34, Township 19 South, Range 20 East, Citrus County, Florida; thence South 0° 54' 22" West along said East boundary of Section 34, a distance of 97.26 feet; thence North 88° 33' 28" West 1303.40 feet; thence South 0° 54' 22" West 1170.60 feet; thence North 89° 56' 23" West 523.50 feet; thence South 0° 07' 16" East 15 feet; thence North 89° 56' 23" West 363 feet to the Point of Beginning; thence continue North 89° 56' 23" West 121 feet; thence South 0° 07' 16" East 180 feet to a point on the Northerly right of way line of Robinson Road; thence South 89° 56' 23" East along said Northerly right of way line 121 feet; thence North 0° 07' 16" West 180 feet to the Point of Beginning. Also known as Lot 10-A, of HAMPTON WOODS, an unrecorded subdivision. Parcel Identification Number: 2342269, Recorded February 23, 2021 in the Official Records Citrus County FL, Angela Vick, Clerk of the Circuit Court & Comptroller #2021011161 BK: 3137 PG: 664 2/23/2021 10:49 AM Receipt: 2021009611.

29. Plaintiffs are entitled to joint title to prevent fraudulent conveyance, or alternatively, damages in the form of a constructive trust as: Defendants engaged in

9

criminal and negligent acts which deprived Michael Jr.'s, deceased's heirs of their future statutory allotments.  The foregoing admissions by Misty provide the predicate for the court to award a joint title or a constructive trust in this matter. Fla. Stat. § 48.23(1)(a) and the full faith and credit of the United States Constitution and the current implementing statute, 28 U.S.C. § 1738, declares that these materials should receive "the same full faith and credit" in each state that they have in the state "from which they are taken."

## COUNT I

### (Negligence)

### (Against Defendant Misty)

30.     The allegations contained in paragraphs 1 through 29 are re-alleged and incorporated herein by reference, and Plaintiffs further allege as follows:

31.     Misty undertook to care for the health, safety and welfare of Michael, Jr., deceased, a dependent and vulnerable adult, and as such, Misty had assumed duties to Michael, Jr., deceased, including, but not limited to: take reasonable care to avoid causing injury to Michael, Jr. deceased; not provide dangerous mind-altering illicit substances; maintain a safe physical environment; and abide by, all federal, state and local statutes; provide and ensure necessary care and treatment for conditions to prevent needless injury and/or aggravation of injuries, pain and suffering, and; properly report, and act upon injury caused to Michael, Jr.,

deceased, by Misty.

32.  As a direct, legal, and/or proximate result of Misty's negligence, Plaintiffs have suffered, and will continue to suffer, the injuries and damages as set forth herein.

33.  As a direct, legal, and/or proximate result of Misty's negligence, and the negligence, actions, omissions, and/or other wrongful conduct of Misty, Michael, Jr., deceased, suffered an agonizing and untimely death on or about August 11, 2022.

34.  As a direct, legal, and/or proximate result of Misty's negligence, Plaintiffs and Michael, Jr., deceased, suffered non-pecuniary losses including, but not limited to, severe pain and suffering, mental anguish, disability, loss of enjoyment of life, diminished life expectancy, and death, and his estate is thereby entitled to recover damages. An action will be brought to appoint an executor of Michael, Jr., deceased's estate and Misty must be disqualified as acting as an executor of his estate as she was the direct, legal, and/or proximate cause of Michael, Jr., deceased, suffering an agonizing and untimely and premature death on or about August 11, 2022.

35.  As a direct, legal, and/or proximate result of Misty's negligence, Plaintiffs and Michael, Jr., deceased, incurred substantial pecuniary losses, including, but not limited to, substantial medical expenses, funeral and burial

expenses, and Plaintiffs and Michael, Jr.'s, deceased, estate are thereby entitled to recover damages in such amounts as shall be shown at the time of trial.

36. As a direct, legal, and/or proximate result of Misty's negligence, Plaintiffs have suffered pecuniary and non-pecuniary damages, including, but not limited to, loss of love and affection, society, companionship, comfort, consortium, protection, care and attention, and other benefits of their loved one, Michael Jr., deceased, and are thereby entitled to recover damages in such amounts as shall be shown at the time of trial.

37. As a direct, legal, and/or proximate result of Misty's negligence, Plaintiffs, each individually, have suffered, and will suffer in the future, anxiety, serious mental anguish, and emotional distress, and they are entitled to recover damages therefor.

## COUNT II

### (Gross Negligence)

### (Against Defendant Misty)

38. The allegations contained in paragraphs 1 through 37 are re-alleged and incorporated herein by reference, and Plaintiffs further allege as follows:

39. Misty's actions, omissions, violations, and wrongful conduct, as described herein constituted aggravated and/or magnified Misty's failures to act as a reasonable person to avoid injury and/or harm to Plaintiffs.

40. Misty's grossly negligent actions and omissions included, but were not limited to, Misty giving Michael, Jr., deceased, the fatal dose of Heroine/Fentanyl and after she had done so, failed to render aid to Michael Jr., deceased, including the failure to timely intervene to rescue Michael, Jr., deceased, by calling 911 two hours earlier than she did and/or rendering further aid, when Michael, Jr., deceased's health, welfare and safety were in serious and life-threatening jeopardy.

41. Misty's grossly negligent actions and omissions included, but were not limited to, the foregoing and deliberate concealment of the circumstances surrounding Michael Jr., deceased's death, failing to report the circumstances surrounding Michael, Jr., deceased's death accurately and truthfully, and failure to timely obtain reasonable, necessary and appropriate medical care after causing the peril Misty placed Michael, Jr. deceased, in at that time.

42. Misty acted recklessly and with callous indifference to the well-being, rights and/or safety of Michael, Jr., deceased.

43. As a direct, legal, and/or proximate result of Misty's gross negligence, recklessness, callous indifference, and/or other wrongful conduct, Plaintiffs have suffered, and will continue to suffer, the injuries and damages as set forth herein.

## COUNT III

**(Negligent Infliction of Emotional Distress)**

**(All Defendants)**

44. The allegations contained in paragraphs 1 through 43 are re-alleged and incorporated herein by reference, and Plaintiffs further allege as follows:

45. Misty's negligence, gross negligence, actions, and omissions in caring for Michael, Jr., deceased, and Misty and Adams' wrongful conduct, civil conspiracy to conceal and cover up the circumstances surrounding Michael, Jr., deceased's death, statutory violations, as described herein, constituted, and did negligently inflict emotional distress upon Plaintiffs, and Defendants knew, or should have known, that emotional distress was the likely result of their conduct.

46. As a direct, legal, and/or proximate result of Defendants' conduct as aforesaid, Plaintiffs have suffered, and will continue to suffer, the injuries and damages as set forth herein.

## COUNT IV

### (Intentional Infliction of Emotional Distress)

### (All Defendants)

47. The allegations contained in paragraphs 1 through 46 are re-alleged and incorporated herein by reference, and Plaintiffs further allege as follows:

48. Misty's negligence, gross negligence, actions, and omissions in caring for Michael, Jr., deceased, and Misty and Adams' wrongful conduct, civil conspiracy to conceal and cover up the circumstances surrounding Michael, Jr., deceased's death, statutory violations, as described herein, constituted, as described

herein, was intended to inflict emotional distress upon Plaintiffs and/or Defendants knew, or should have known, that emotional distress was the likely result of their conduct.

49. As a direct, legal, and/or proximate result of Defendants' conduct aforesaid, Plaintiffs have suffered, and will continue to suffer, the injuries and damages as set forth herein.

## COUNT V

### (Civil Conspiracy)

### (All Defendants)

50. The allegations contained in paragraphs 1 through 49 are re-alleged and incorporated herein by reference, and Plaintiffs further allege as follows:

51. Misty and Adams agreed to commit an unlawful and/or wrongful act including but not limited to: destroying evidence, misleading the police to cover up Misty's crimes and negligence against Michael Jr., deceased, thereby further injuring Plaintiffs.

## Count VI.

### (Unjust enrichment and Constructive Trust)

52. The allegations contained in paragraphs 1 through 51 are re-alleged and incorporated herein by reference, and Plaintiffs further allege as follows:

53. Misty would be unjustly enriched by solely possessing the subject

property in title and name after directly causing the death of Michael Jr. deceased and must be disgorged of any profiting by her actions.

54. In the alternative, a constructive trust must be created for the benefit of Plaintiffs and Roe Plaintiffs and to make Plaintiffs and Roe Plaintiffs whole again.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants and each of them and for relief as follows:

    A. That this court assume jurisdiction over this matter.

    B. Award Plaintiffs General Damages for Emotional Pain and suffering for the loss of love and comfort of their family member Michael, Jr., deceased's, whose life was cut exceedingly short by Misty's actions.

    C. Award Plaintiffs punitive damages.

    D. An order preventing fraudulent conveyance of the property by Misty until the property is jointly held by the parties to prevent Plaintiffs from being irreparable harmed for loss of joint title to unique property; alternatively, order a constructive trust to prevent Plaintiffs from being irreparably harmed for loss of sale proceeds from joint title to unique property.

      E.      Award to Plaintiffs their costs, reasonable Attorneys' fees, and prejudgment interest.

      F.      Award such other relief as this Court deems just and equitable.

DATED:    Honolulu, Hawaii, August 22, 2022.

                        /s/ Shawn A. Luiz
                        SHAWN A. LUIZ

                        Attorneys for Plaintiffs